IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
CLARKSBURG

RALPH J. MULLINS,

      **Plaintiff,**

v.                                Civ. Action No. 1:22-CV-98
                                       (Judge Kleeh)

CRANSTON D. JOHNSON, STEVE ANDRYZCIK,
EDIE VIOLA, GARY WEBER, JEFFERY FRIEND,
DUANE TATAR, TIMOTHY P. STRANKO,
SANDY WEISS, and THE CITY OF WESTOVER,
WEST VIRGINIA,

      **Defendants.**

## MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS [ECF NOS. 4, 15]

Pending before the Court are Defendants Timothy Stranko, Sandy Weiss, and the City of Westover's Motion to Dismiss [ECF No. 4] and Defendants Cranston David Johnson, Steve Andryzcik, Jeffrey Friend, and any other served Defendants' Motion to Dismiss [ECF No. 15]. For the reasons discussed herein, the Motions [ECF Nos. 4, 15] are **GRANTED IN PART and DENIED IN PART.**

### I.   PROCEDURAL HISTORY

On September 23, 2022, Plaintiff Ralph J. Mullins ("Plaintiff"), by counsel, filed a Complaint against Cranston D. Johnson, Steve Andryzcik, Edie Viola, Gary Weber, Jeffery Friend, Duane Tatar, Timothy Stranko, Sandy Weiss, and the City of Westover. ECF No. 1. The Complaint alleges (1) 42 U.S.C. § 1983

**MULLINS v. JOHNSON, et al.**                                    **1:22-CV-98**

### MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS [ECF NOS. 4, 15]

retaliation in violation of the First Amendment; (2) 42 U.S.C. § 1983 violation of the Fourth Amendment; (3) 42 U.S.C. § 1983 violation of the Fourteenth Amendment; (4) 42 U.S.C. § 1983 Monell Liability; (5) Slander; (6) Assault; (7) Battery; (8) violation of the West Virginia Whistle-Blower Law; and (9) Intentional Infliction of Emotional Distress.

On October 26, 2022, Defendants Timothy Stranko ("Stranko"), City of Westover ("Defendant Westover"), and Sandy Weiss ("Weiss") moved to dismiss Plaintiff's Complaint. ECF No. 4. Plaintiff responded in opposition to the Motion to Dismiss on November 16, 2022 [ECF No. 6] and Defendants Stranko, Westover, and Weiss replied in support of their Motion to Dismiss (ECF No. 7]. Subsequently on April 17, 2023, Defendants Cranston David Johnson ("Johnson"), Steve Andryczik ("Andryczik"), Jeffrey Friend ("Friend"), and any other served Defendants also moved to dismiss the Complaint, incorporating the previously filed memorandum in support of dismissal [ECF No. 5]. ECF No. 15. On May 16, 2023, Plaintiff responded in opposition, incorporating its previously filed memorandum response [ECF No. 6]. ECF No. 16.[1] The Motions to Dismiss [ECF Nos. 4, 15] are thus briefed and ripe for review.

---

[1] Appearing that all Defendants were served, the Court construes the two motions to seek dismissal of Plaintiff's Complaint as to all named Defendants, excluding Count VI and Count VII against **Defendant Johnson.**

**MULLINS v. JOHNSON, et al.**                                    **1:22-CV-98**

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANTS' MOTIONS TO DISMISS [ECF NOS. 4, 15]**

## II.  FACTUAL ALLEGATIONS

Plaintiff Ralph Mullins was appointed to the Westover City Council in the Fall of 2016 and continued to serve through the first months of 2022. ECF No. 1, Compl. at ¶ 43. During his time in office, Plaintiff alleges there were instances of corruption and police misconduct involving Mayor Cranston D. Johnson ("Johnson") and the Westover Police Department ("WPD") Id. at ¶¶ 44-45. Plaintiff believed that as a councilmember, "he was in a unique position to speak out against the injustices and misdealings he saw throughout the municipality." Id. at ¶ 44.

Between December 31, 2018, and August 28, 2019, Plaintiff contends that Westover Police Officer Aaron Dalton engaged in acts of police brutality. Id. at ¶ 49. Plaintiff requested and was granted documents relating to the subject events. Id. at ¶ 50. On October 5, 2020, Plaintiff claimed he called Westover City Attorney Timothy Stranko ("Stranko") regarding his conduct as City Attorney and his alleged involvement in a sexual harassment case involving Officer Dalton, but his call went unanswered. Id. at ¶ 51-52.

Following the resignation of Westover's Chief of Police, Plaintiff called for an investigation into the Westover City Council and Johnson. Id. at ¶ 53. As reason for the investigation, Plaintiff alleges that the City Council attempted to cover-up Officer Dalton's "wrongful arrest and beating" of Andre P. Howton.

3

MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANTS' MOTIONS TO DISMISS [ECF NOS. 4, 15]

Id. at ¶ 54. As part of the "cover-up", Plaintiff contends he,
along with other councilmembers, was delayed information regarding
a letter from members of the WPD calling for Officer Dalton's
removal. Id. at ¶¶ 60-66. Moreover, Stranko denied Plaintiff access
to the letter. Id. at ¶¶ 67-70. The letter was ultimately published
in the news after being obtained via a Freedom of Information Act
request. Id. at ¶ 72.

Due to his "outspoken nature", Plaintiff claims Defendant
Johnson harassed him, utilizing his power and influence as Mayor.
Id. at ¶ 85. For example, Plaintiff alleges Johnson used the
Westover City ordinances as a form of harassment and retaliation.
Id. at ¶ 87. Namely, on July 14, 2021, Plaintiff received a notice
of violation from Westover Code Enforcement stating Plaintiff
violated City Code 11111.07 by not cutting the grass at his home.
Id. at ¶ 88. Though the City of Westover had previously cut the
subject grass, the Director of Public Works informed Plaintiff
that he was responsible for cutting the grass on the embankment at
his house. Id. at ¶¶ 89-92. Then, on September 20, 2021, Plaintiff
received a second notice of City Code violation, stating he failed
to take down a sign for a closed business (City Code 1741.09). Id.
at ¶ 93. Plaintiff contends the violation was improper because his
carwash business was only temporarily closed due to COVID-19. Id.
at ¶ 94. Plaintiff also claims that City Clerk Sandra Weiss

4

MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANTS' MOTIONS TO DISMISS [ECF NOS. 4, 15]

("Weiss") filed a false employee grievance against him, which the
City Council used to take "public action" against him. Id. at ¶¶
96-99.

The bulk of Plaintiff's allegations culminated at a Westover
City Council Meeting on February 22, 2022. See generally, ECF No.
1. During the meeting, Plaintiff and Defendant Johnson "exchanged
words in a contentious debate," regarding Plaintiff's right to
record the meeting. Id. at ¶¶ 100-04. Plaintiff contends he was
wrongfully refused the opportunity to record the meeting regarding
"the handling of the police misconduct cases in Westover." Id. at
¶ 104. Upon Plaintiff and Defendant Johnson exchanging words,
Plaintiff alleges Johnson stood up, approached Plaintiff's desk,
and "began attempting to shove" him. Id. at ¶¶ 101-02. The Chief
of Police tried to put himself between Plaintiff and Johnson, but
"Johnson was able to make contact with the Plaintiff's right
shoulder by shoving in the Plaintiff's direction, causing him to
stagger backwards and twist his knee." Id. at ¶ 103. As a result,
Plaintiff claims he tore his meniscus. Id. at ¶ 109. Defendant
Johnson was further charged with misdemeanor battery following the
February 22, 2022, City Council Meeting. Id. at ¶ 107.

Following the altercation, Plaintiff sought an accommodation
from Defendant Stranko to attend the March 2022 City Council
meeting remotely, but the request was denied. Id. at ¶¶ 111-112.

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANTS' MOTIONS TO DISMISS [ECF NOS. 4, 15]**

Plaintiff wanted to attend the meeting remotely because he "was advised to keep his person away from City Council meetings by his physician." <u>Id.</u> at ¶ 216. Because he was unable to attend remotely, Plaintiff did not attend the March 21, 2022, City Council meeting. <u>Id.</u> at ¶ 112. During the March meeting, the City Council unanimously voted to censure Plaintiff regarding his conduct during the executive session at the February 22, 2022, meeting. <u>Id.</u> at ¶¶ 119-23. Plaintiff believes the censure was based on false accusations and procedurally improper. <u>Id.</u> at ¶¶ 113-18.

Additionally, Plaintiff contends City Councilmember, Edie Viola ("Defendant Viola") attempted to defame him, and harm his reputation by visiting Plaintiff's mother's place of work and stating that "[h]e is nothing but a big fat, lying, son of a bitch." <u>Id.</u> at ¶ 175.

### III. <u>LEGAL STANDARD</u>

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a defendant to move for dismissal upon the ground that a Complaint does not "state a claim upon which relief can be granted." In ruling on a motion to dismiss, a court "must accept as true all of the factual allegations contained in the Complaint." <u>Anderson v. Sara Lee Corp.</u>, 508 F.3d 181, 188 (4th Cir. 2007) (quoting <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007)). A court is "not bound to accept

MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANTS' MOTIONS TO DISMISS [ECF NOS. 4, 15]

as true a legal conclusion couched as a factual allegation."

Papasan v. Allain, 478 U.S. 265, 286 (1986).

A motion to dismiss under Rule 12(6)(b) tests the "legal
sufficiency of a Complaint." Francis v. Giacomelli, 588 F.3d 186,
192 (4th Cir. 2009). A court should dismiss a Complaint if it does
not contain "enough facts to state a claim to relief that is
plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S.
544, 570 (2007). Plausibility exists "when the plaintiff pleads
factual content that allows the court to draw the reasonable
inference that the defendant is liable for the misconduct alleged."
Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The factual
allegations "must be enough to raise a right to relief above a
speculative level." Twombly, 550 U.S. at 545. The facts must
constitute more than "a formulaic recitation of the elements of a
cause of action." Id. at 555. A motion to dismiss "does not resolve
contests surrounding the facts, the merits of a claim, or the
applicability of defenses." Republican Party of N.C. v. Martin,
980 F.2d 942, 952 (4th Cir. 1992).

## IV. DISCUSSION

Defendants move to dismiss Counts I, II, III, IV, V, VIII,
and IX alleging Plaintiff failed to state claims upon which relief
can be granted. ECF Nos. 4, 15. Defendants also argue that
Defendants are entitled to certain immunities. The Court will

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANTS' MOTIONS TO DISMISS [ECF NOS. 4, 15]**

discuss each claim in turn.

### A. 42 U.S.C. § 1983 Constitutional Claims – Counts I, II, III

Under 42 U.S.C. § 1983, Plaintiff alleges retaliation in violation of the First Amendment to the Constitution, unlawful seizure in violation the Fourth Amendment to the Constitution, and deprivation of equal protection under law in violation of the Fourteenth Amendment to the Constitution. See ECF No. 1.

> Proper application of [§ 1983 suits] against public officials requires careful adherence to the distinction between personal- and official-capacity action suits. Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law. Official-capacity suits, in contrast, generally represent only another way of pleading an action against an entity of which an officer is an agent. As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is *not* a suit against the official personally, for the real party in interest is the entity. Thus, while an award of damages against an official in his personal capacity can be executed only against the official's personal assets, a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself.

Kentucky v. Graham, 473 U.S. 159, 165-66 (1985) (internal quotation marks and citations omitted).

#### i. Official capacity

Because an official-capacity suit is "essentially a claim against the [entity]," official-capacity claims "should be dismissed as duplicative" when the entity is also named as a

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS [ECF NOS. 4, 15]**

defendant. <u>Love-Lane v. Martin</u>, 355 F.3d 766, 783 (4th Cir. 2004) (citing <u>Kentucky</u>, 473 U.S. at 165-66). Plaintiff has brought the same § 1983 claims against Defendants Johnson, Andryzcik, Viola, Weber, Friend, Tatar, Stranko, and Weiss in their official capacities as he asserted against Defendant City of Westover. Accordingly, this court finds that these claims are duplicative and hereby **DISMISSES** all official-capacity § 1983 First, Fourth, and Fourteenth Amendment claims against the named individual Defendants.

### ii. Individual capacity

"[T]o establish personal liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." <u>Kentucky</u>, 473 U.S. at 166 (internal citation omitted). Here, the alleged deprivation of Plaintiff's federal rights is three-fold: (1) Defendant Johnson and "other council persons" violated his First Amendment "constitutional rights by retaliating against him for speaking mere words of public concern." [ECF No. 1, at ¶ 132]; (2) Defendant Johnson violated Plaintiff's Fourth Amendment constitutional rights by "unreasonably seizing Plaintiff" at the February 22, 2022, city council meeting [<u>Id.</u> at ¶ 144]; and (3) the Defendant City of Westover denied Plaintiff equal protection of the law [<u>Id.</u>

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS [ECF NOS. 4, 15]**

at ¶ 150]. The Court will address each of Plaintiff's claims under § 1983 in turn.

**1. Count I: § 1983 First Amendment Claim**

Plaintiff's First Amendment claim fails to state a claim upon which relief can be granted. The First Amendment provides that "Congress shall make no law ... abridging the freedom of speech." U.S. CONST. amend. I. The First Amendment right to free speech includes not only the affirmative right to speak, but also the right to be free from retaliation by a public official for the exercise of that right. See ACLU v. Wicomico County, Md., 999 F.2d 780, 785 (4th Cir. 1993) ("Retaliation, though it is not expressly referred to in the Constitution, is nonetheless actionable because retaliatory actions may tend to chill individuals' exercise of constitutional rights.").

> [T]o state a colorable retaliation claim under Section 1983, a plaintiff 'must allege that (1) he engaged in protected First Amendment activity, (2) the defendant took some action that adversely affected his First Amendment rights, and (3) there was a causal relationship between his protected activity and the defendant's conduct.'

Martin v. Duffy, 858 F.3d 239, 249 (4th Cir. 2017) (quoting Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 499 (4th Cir. 2005)).

Public employees are "entitled to be protected from firings,

MULLINS v. JOHNSON, et al.                                    1:22-CV-98

### MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS [ECF NOS. 4, 15]

demotions and other adverse employment consequences resulting from the exercise of their free speech rights, as well as other First Amendment rights." Alderman v. Pocahontas Cty. Bd. of Educ., 675 S.E.2d 907, 916 (W. Va. 2009) (citing Pickering v. Board of Education, 391 U.S. 563 (1968)). In cases involving a public employee's speech, courts apply the Pickering standard. Pickering, 391 U.S. 563.

> "To determine if a public employee has a cognizable First Amendment claim for retaliatory discharge, we apply a test derived from Pickering v. Bd. of Educ., 391 U.S. 563 (1968), in which we consider: [']( 1) whether the public employee was speaking as a citizen upon a matter of public concern or as an employee about a matter of personal interest; (2) whether the employee's interest in speaking upon the matter of public concern outweighed the government's interest in providing effective and efficient services to the public; and (3) whether the employee's speech was a substantial factor in the employee's termination decision.['] McVey v. Stacy, 157 F.3d 271, 277-78 (4th Cir. 1998)."

Billioni v. Bryant, 998 F.3d 572, 576 (4th Cir. 2021). "Speech involves a matter of public concern if it affects the social, political, or general well-being of a community." Bloom v. Bd. of Educ. of Monongalia Cnty., No. 1:13CV128, 2013 WL 5966398, at *3 (N.D.W. Va. Nov. 8, 2013) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 246 (4th Cir. 1999)). However, "[p]ersonal grievances, complaints about conditions of employment, or

MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANTS' MOTIONS TO DISMISS [ECF NOS. 4, 15]

expressions about other matters of personal interest do not
constitute speech about matters of public concern that are
protected by the First Amendment." Id.

Importantly, "when public employees make statements pursuant
to their official duties, the employees are not speaking as
citizens for First Amendment purposes, and the Constitution does
not insulate their communications from employer discipline."
Garcetti v. Ceballos, 547 U.S. 410, 421 (2006). "Specifically, a
public employee with 'a confidential, policymaking, or public
contact role' who 'speaks out in a manner that interferes with or
undermines the operation of the agency' enjoys 'substantially less
First Amendment protection than does a lower level employee.'"
Austin v. Preston Cnty. Comm'n, No. 1:13CV135, 2014 WL 5148581, at
*6 (N.D.W. Va. Oct. 14, 2014) (quoting McVey v. Stacy, 157 F.3d
271, 278 (4th Cir. 1998)).

If a public employee is speaking as a citizen on a matter of
public concern, "[t]he question becomes whether the relevant
government entity had an adequate justification for treating the
employee differently from any other member of the general public."
Austin, 2014 WL 5148581, at *5 (quoting Garcetti, 547 U.S. at 418).
The plaintiff also "bears the initial burden of proving that his
exercise of his First Amendment rights 'was a "substantial" or
"motivating" factor in the employer's decision' to alter the

12

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS [ECF NOS. 4, 15]**

plaintiff's conditions of employment. Bland v. Roberts, 730 F.3d 368, 375 (4th Cir. 2013), as amended (Sept. 23, 2013) (quoting Wagner v. Wheeler, 13 F.3d 86, 90 (4th Cir. 1993); Sales v. Grant, 158 F.3d 768, 775-76 (4th Cir. 1998)). Furthermore, "a plaintiff pursuing a First Amendment retaliation claim must show, among other things, that the government took an 'adverse action' in response to his speech that 'would not have been taken absent the retaliatory motive'." Houston Cmty. Coll. Sys. v. Wilson, 595 U.S. 468, 477 (2022) (internal quotations omitted).

Here, Plaintiff asserts that Johnson and "City Council, in their official capacity" violated his First Amendment rights by retaliating against him for expressing "concerns for the safety and welfare of the citizens of Westover as it pertains to the Westover Police Department." Id. at ¶ 137. Because the Court has already dismissed the official-capacity claims against the councilmembers and none of the facts in support of the First Amendment claim specifically identify any of the councilmembers, the Court construes Count I to be raised only against Defendant Johnson in his individual capacity. Plaintiff also argues that Defendant Johnson violated his First Amendment rights "when he assaulted, battered, and censured the Plaintiff for his mere use of words, which were intended to address an issue of public concern." Id. at ¶ 140.

<u>MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANTS' MOTIONS TO DISMISS [ECF NOS. 4, 15]</u>

Defendants contend that the First Amendment claim should be dismissed for several reasons: (1) Plaintiff does not identify the particular speech which he contends is protected [ECF No. 5 at pp. 8-10] and (2) the Defendants' alleged retaliatory action did not adversely affect Plaintiff's freedom of speech [ECF No. 5 at pp. 10-13].

Viewing the Complaint in the light most favorable to the Plaintiff, the subject speech, which Plaintiff contends is protected, can be understood as the "expression of concerns for the safety and welfare of the citizens of Westover as it pertains to the Westover Police Department." ECF No. 1, at ¶ 137. Plaintiff contends this speech is protected because he spoke as a citizen on a matter of public concern, and not as a councilman. <u>Id.</u> at ¶¶ 133-34. Issues of police misconduct can be reasonably viewed as a matter of public concern because they affect the social, political, and general well-being of the community of Westover.

However, given that the statements appear to have been made, at least in part, during a council meeting and to other elected officials, there is reason to believe that the statements were made pursuant to Plaintiff's official duties. Moreover, Plaintiff states that as "a Council Member for the City of Westover, Plaintiff was in a unique position to speak out against the injustices and misdealings he saw throughout the municipality."

<u>MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS [ECF NOS. 4, 15]</u>

<u>Id.</u> at ¶ 45. Given that a city council member is a public employee with "a confidential, policymaking, or public contact role", Plaintiff's speech could "enjoy[] 'substantially less First Amendment protection.'" <u>Austin</u>, 2014 WL 5148581, at *6 (quoting <u>McVey</u>, 157 F. at 278).

Regardless, assuming only for argument's sake that Plaintiff spoke as a private citizen on a matter of public concern, the First Amendment claim still fails at the 12(b)(6) stage because Plaintiff did not plead sufficient facts to support that Defendant Johnson adversely affected his First Amendment rights or that there was a causal relationship between his speech and the alleged retaliatory conduct. Plaintiff alleges adverse employment action in the form of "City Code violations, public censure, verbal and physical violence, and . . . freezing his [councilmember] privileges." ECF No. 1, at ¶ 135.

First, the City Code violations from Westover Code Enforcement and Public Works for the City of Westover are neither conditions of Plaintiff's employment nor related to Plaintiff's alleged protected speech. The City of Westover has a legitimate interest in enforcing its codes regarding uncut grass (City Code 1111.07) and inactive businesses (City Code 1741.09). Moreover, Plaintiff's Complaint does not readily dispute that he did in fact violate the provisions. While he contends his car wash business

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS [ECF NOS. 4, 15]**

was not permanently closed, it had been temporarily closed for a year and a half when he was cited for the violation. See Id. at ¶¶ 93-94. Enforcing the City Codes did not adversely affect or deter Plaintiff's free speech and Plaintiff has not plead a causal relationship between the code violations and his speech. Rather, the code violations occurred in July and September of 2021, and Plaintiff's claimed protected speech occurred and/or continued through at least February 2022. See Id. at Count I.

Second, the Court is persuaded by Defendants' argument that the censure is not a First Amendment violation and thus, cannot serve as a materially adverse action in support of Plaintiff's claim. The Supreme Court of the United States recently concluded that a governing body's censure does not qualify "as a materially adverse action," in a First Amendment retaliation claim. Houston Cmty. Coll. Sys., 595 U.S. at 479. In Houston Cmty. Coll. Sys., the Court found that an elected official's right to speak was not materially deterred by an elected board's censure of the public official due to his own conduct. Id. at 478-79. The Court reasoned that "we expect elected representatives to shoulder a degree of criticism about their public service from their constituents and their peers and to continue exercising their free speech rights when the criticism comes." Id. at 478. Moreover, the Court noted that "[t]he First Amendment surely promises an elected

16

MULLINS v. JOHNSON, et al.                                    1:22-CV-98

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANTS' MOTIONS TO DISMISS [ECF NOS. 4, 15]**

representative . . . the right to speak freely on questions of
government policy. <u>But just as surely, it cannot be used as a
weapon to silence other representatives seeking to do the same</u>."
<u>Id.</u> (emphasis added). Ultimately, the Court found that the censure
did not infringe upon the public official's First Amendment rights
because the censure itself "was a form of speech by elected
representatives"; "it concerned the public conduct of another
elected representative"; "[e]veryone involved was an equal member
of the same deliberative body"; and did not prevent the official
from doing his job. <u>Id.</u> at 478.

Here, the censure cannot support Plaintiff's claim because
the censure was itself protected speech and the Complaint and its
attached exhibits show that the censure was unrelated to
Plaintiff's claimed protected speech regarding the Westover
police. As an initial matter, <u>Houston Cmty. Coll. Sys.</u> supports
the councilmembers' right to censure Plaintiff based upon his
conduct and the facts alleged do not support that the censure
otherwise deterred Plaintiff's speech.

Regardless, the censure was unrelated to the claimed
protected speech. Plaintiff's Complaint states that the Westover
City Council voted to censure him based upon his "actions during
the executive session on February 22, 2022." ECF No. 1, at ¶¶ 115-
23. Moreover, the news article Plaintiff attached to his Complaint

MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANTS' MOTIONS TO DISMISS [ECF NOS. 4, 15]

as Exhibit O states that Plaintiff "refused when asked to turn off his recording device" during the City Council's executive session. ECF No. 1, Ex. O.[2] By Plaintiff's own pleading, the censure was not retaliation for him speaking out on matters of public concern but was a response to him refusing to cease recording the executive session. Plaintiff does not plead the existence of a rule or practice of allowing such recordings. Rather, executive sessions are commonly understood to be for private or sensitive matters, which cannot be discussed publicly on the record. There is again a legitimate interest in maintaining the confidentiality of executive session discussions and prohibiting the recording of such conversations. Accordingly, Plaintiff cannot rely upon the censure in support of his First Amendment retaliation claim.

---

[2] Plaintiff relies upon, and attaches to his Complaint as Exhibit M., Advisory Opinion 2021-22 from the West Virginia Ethics Commission, to argue he was permitted to record the executive session and thus contends the censure was improper. However, the Advisory Opinion provides in pertinent part:

> that the Ethics Act <u>does not prohibit a city council from barring a public official or public employee from recording executive sessions</u>. If a city council allows its members to record its executive session, the Requester and other <u>City Officials may not, however, improperly disclose confidential information contained in the recordings</u> or use confidential information to further their own interests or the interests of other persons.

ECF No. 1, Ex. M (emphasis added). Based upon the clear language of the Advisory Opinion, the Westover City Council is permitted to bar a public official from recording an executive session. Moreover, Plaintiff could not disclose the recording, if permitted to record the executive session.

MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANTS' MOTIONS TO DISMISS [ECF NOS. 4, 15]

Third, the same is true regarding the alleged retaliatory acts of violence. By Plaintiff's own pleading, Defendant Johnson's alleged violence towards him during the February 22, 2022, City Council meeting was not caused by Plaintiff's claimed protected speech. See ECF No. 1, at ¶ 104 ("Defendant Johnson committed this battery over a dispute with Plaintiff as to whether he could record a meeting . . ."); Id. at ¶ 166 ("Defendant Johnson physically assaulted and battered Plaintiff because Plaintiff was recording the City Council executive session."). Thus, these allegations do not support the necessary retaliatory causation.

Fourth and finally, the Complaint does not adequately allege that Plaintiff was stripped of his councilmember privileges due to his expression of protected speech. Plaintiff alleges that following the February 2022 meeting, "he was advised to keep his person away from City Council meetings by his physician." ECF No. 1, at ¶ 216. Assuming this is true, Plaintiff *chose* to not attend the bi-weekly City Council meetings. Defendants did not refuse Plaintiff entry at the meetings. Rather, Plaintiff elected to not attend the meetings and argues that he was retaliated against because the City Council decided "to not make a decision regarding Plaintiff's ability to video conference or call into the bi-weekly City Council meetings." Id. at ¶ 219. As alleged, Plaintiff does not offer facts to support that other councilmembers were permitted

19

MULLINS v. JOHNSON, et al.                              1:22-CV-98

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANTS' MOTIONS TO DISMISS [ECF NOS. 4, 15]**

to participate remotely. And ultimately, Plaintiff was not
stripped of the privileges of his position because he was not
prohibited from physically attending the meetings.

Accordingly, Defendants' Motions to Dismiss as to Count I are
**GRANTED** [ECF No. 4, 15] and Plaintiff's First Amendment claim,
Count I, is **DISMISSED**.

### 2. Count II: § 1983 Fourth Amendment Claim

Plaintiff claims that Defendant Johnson,[3] while acting under
the color of law, violated his Fourth Amendment rights by
unreasonably seizing him [ECF No. 1, at ¶ 244] and using excessive
force [ECF No. 6 at p. 11] at the February 22, 2022, City Council
meeting. The Fourth Amendment to the United States Constitution
provides,

> The right of the people to be secure in their
> persons, houses, papers, and effects, against
> unreasonable searches and seizures, shall not
> be violated, and no Warrants shall issue, but
> upon probable cause, supported by Oath or
> affirmation, and particularly describing the
> place to be searched, and the persons or
> things to be seized.

U.S. Const. amend. IV. "A person is 'seized' only when, by means
of physical force or a show of authority, his freedom of movement
is restrained." Trulock v. Freeh, 275 F.3d 391, 400 (4th Cir.

---

[3] The Court construes Count II to only assert claims against Defendant
Johnson.

20

MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANTS' MOTIONS TO DISMISS [ECF NOS. 4, 15]

2001). "To state an excessive force claim under the Fourth Amendment, a plaintiff must show that he was seized and that the force used was objectively unreasonable." Est. of Green v. City of Annapolis, No. 1:22-CV-03198-JRR, 2023 WL 6381453, at *12 (D. Md. Sept. 30, 2023); Graham v. Connor, 490 U.S. 386, 395 (1989)).

"The Fourth Amendment prohibits government actors from committing unreasonable seizures. . . . the Supreme Court has made clear that "the [Fourth] Amendment[ ] ... applies in the civil context as well." Meeks v. McClung, No. 2:20-CV-00583, 2023 WL 8791686, at *8 (S.D.W. Va. Dec. 19, 2023) (quoting Soldal v. Cook Cnty., 506 U.S. 56, 67 (1992)).

"Only rarely ... has the [Supreme] Court considered the nature of fourth amendment restrictions on the conduct of government officials in noncriminal investigations." United States v. Attson, 900 F.2d 1427, 1430 (9th Cir. 1990) (internal citation omitted).

> Yet, while the reach of the fourth amendment has been extended to include various types of governmental conduct outside the traditionally recognized area of law enforcement, the Court has been careful to limit this expansion to governmental conduct that can reasonably be said to constitute a "search" or a "seizure" within the meaning of the fourth amendment. The types of non-law enforcement conduct to which the Court has extended the scope of the amendment are thus typically motivated by some sort of investigatory or administrative purpose designed to elicit a benefit for the government.

MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANTS' MOTIONS TO DISMISS [ECF NOS. 4, 15]

Id. See also, United States v. Andrews, No. 1:12CR100-1, 2014 WL
1663369, at *2 (N.D.W. Va. Apr. 23, 2014) (noting "non-law
enforcement governmental conduct only constitutes a search if
'such conduct has as its purpose the intention to elicit a benefit
for the government in either its investigative or administrative
capacities.'"). "The question whether one is a private actor for
Fourth Amendment purposes 'necessarily turns on the degree of the
Government's participation in the private party's activities."
Horton v. Vinson, No. 1:14CV192, 2015 WL 4774276, at *18 (N.D.W.
Va. Aug. 12, 2015) (quoting Skinner v. Ry. Labor Execs. Ass'n, 489
U.S. 602, 614 (1989)).

Furthermore, in the context of a § 1983 claim, "a person acts
under color of state law only when 'acting with power possessed by
virtue of [his] employment with the state'". Mull v. Griffith, No.
5:17-CV-94, 2019 WL 5295189, at *3 (N.D.W. Va. Oct. 18, 2019)
(internal quotation omitted). The Fourth Circuit has established
"[a]s a general rule, 'a public employee acts under color of state
law while acting in his official capacity or while exercising his
responsibilities pursuant to state law.'" Conner v. Donnelly, 42
F.3d 220, 223 (4th Cir. 1994). Importantly, "the under-color-of-
state-law element of § 1983 excludes from its reach merely private
conduct, no matter how discriminatory or wrongful." Am. Mfrs. Mut.
Ins. Co. v. Sullivan, 526 U.S. 40, 50 (1999) (internal quotation

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANTS' MOTIONS TO DISMISS [ECF NOS. 4, 15]**

marks and citations omitted).

A Puerto Rico Federal District Court previously analyzed whether a mayor's alleged violent conduct could qualify as an action under color of law. Rodriguez-Rodriguez v. Ortiz-Velez, 405 F. Supp. 2d 162, 166–67 (D.P.R. 2005). In Rodriguez-Rodriguez, a mayor was sued under § 1983 following an incident in which a mayor hit the plaintiff, a former police officer, in the eye with a metal object. Id. at 164. In assessing the totality of the circumstances, the Court noted that "plaintiff's own evidence describe[d] a sudden occurrence which ballooned into an uncontrolled, irrational and violent scenario." Id. at 167. The Court found that the mayor's actions were private ones, and that he just happened to be mayor. Id. at 168. In reaching its conclusion, the Court reasoned that there was "no indication that this activity was related in any manner to the position he held or to his duties, nor [was] there any evidence that [the mayor's] involvement in the physical confrontation with [Plaintiff] was related to either of these, or that he could not have engaged in that same conduct had he not been Mayor." Id. at 167-68. Thus, the Court concluded that "the circumstances surrounding the incident established that his actions were personal in nature and unrelated to his position as Mayor or to the performance of the duties of that office." Id. at 168.

MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANTS' MOTIONS TO DISMISS [ECF NOS. 4, 15]

Plaintiff's Fourth Amendment claim here offers little more than a conclusory restatement of law. Specifically, Plaintiff does not provide facts to support the assertions that Defendant Johnson was acting under color of law, as required for a § 1983 claim, or that he was in fact "seized" in violation of the Fourth Amendment. Viewing the allegations in the light most favorable to Plaintiff, the only fact supporting that Defendant Johnson was acting under color of law is that the altercation occurred at a City Council meeting. Plaintiff does not offer any other facts to show that Defendant Johnson's conduct related in any manner to his position or his mayoral duties. Rather, the alleged conduct was personal in nature and beyond the scope of a mayor's role and responsibilities.

Regarding the seizure, Plaintiff does not any allege facts to support that his freedom of movement was restricted by Defendant Johnson at the February 22, 2022, City Council meeting. No facts indicate that Plaintiff felt that he was not free to leave the meeting. Furthermore, to the extent Plaintiff tried to stretch its factual pleadings through its reply briefing to include excessive force allegations, the claim still fails. In addition to providing no facts to support he was in fact seized, the facts do not support that "shoving in the Plaintiff's direction" [ECF No. 1, ¶ 103] qualifies as objectively unreasonable and an excessive use of force.

MULLINS v. JOHNSON, et al.                                    1:22-CV-98

MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANTS' MOTIONS TO DISMISS [ECF NOS. 4, 15]

Accordingly, Plaintiff's § 1983 Fourth Amendment claim fails because Plaintiff did not plead sufficient facts to support that Defendant Johnson acted under color of law or that Plaintiff was seized in violation of the Fourth Amendment. Thus, Defendants' Motions to Dismiss [ECF Nos. 4, 15] as to Count II are **GRANTED** and the § 1983 Fourth Amendment claim, Count II, is **DISMISSED**.

### 3. Count III: § 1983 Fourteenth Amendment Claim

The Fourteenth Amendment to the Constitution provides United States citizens the right to be treated equally under the law. "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

The equal protection clause "secure[s] every person within the State's jurisdiction against intentional and arbitrary discrimination." Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (quotation marks and alteration omitted). The equal protection clause "requires that the states apply each law, within its scope, equally to persons similarly situated, and that any differences of application must be justified by the law's purpose." Sylvia Dev. Corp. v. Calvert Cnty., 48 F.3d 810, 818 (4th Cir. 1995). "To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or

25

MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANTS' MOTIONS TO DISMISS [ECF NOS. 4, 15]

purposeful discrimination." <u>Morrison v. Garraghty</u>, 239 F.3d 648, 654 (4th Cir. 2001). The court then considers "whether the disparity in treatment can be justified under the requisite level of scrutiny." <u>King v. Rubenstein</u>, 825 F.3d 206, 220 (4th Cir. 2016).

A plaintiff may bring a "class of one" equal protection claim by alleging "that []he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." <u>Willis v. Town of Marshall, N.C.</u>, 426 F.3d 251, 263 (4th Cir. 2005) (quoting <u>Olech</u>, 528 U.S. at 564); <u>see also</u> <u>Sansotta v. Town of Nags Head</u>, 724 F.3d 533, 542-44 & n.13 (4th Cir. 2013).

Plaintiff alleges that he was treated differently than other councilmembers, and thus discriminated against, because of his beliefs regarding police brutality. ECF No. 1, at ¶¶ 150-52. Defendants contend that the Fourteenth Amendment claim must fail because Plaintiff's Complaint does not specify how he was discriminated against, does not identify how he was treated differently under law, or that enforcement of any law was irrational. ECF No. 5, at pp. 14-15. The Court agrees that Plaintiff has not pled a legally cognizable claim under the Equal Protection Clause of the Fourteenth Amendment. Plaintiff has failed to even allege that anyone in his same or similar situation

### MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS [ECF NOS. 4, 15]

was treated differently under the law, or that any such alleged treatment was not "rationally related to a legitimate state interest."

While Plaintiff claims he was treated differently than the other councilmembers, he does not point to a law which was differently enforced against him because of his views on police brutality. Furthermore, he does not offer facts to support that any alleged difference in treatment was not rational.

Moreover, the only laws discussed in Plaintiff's Complaint relate to City Codes discussing business signage and unkept grass. The facts as alleged by Plaintiff do not support that Westover's enforcement of these codes deprived him of equal protection under the law. Plaintiff's violation or believed-violation of the City Codes provides a rational basis for the City's enforcement, which is completely unrelated to the issue of police brutality. Thus, Defendants' Motions to Dismiss [ECF Nos. 4, 15] as to Count III are **GRANTED** and Count III of Plaintiff's Complaint is **DISMISSED**.

In conclusion, Plaintiff has failed to allege facts showing that these Defendants personally acted to deprive Plaintiff of any constitutional rights. Therefore, Plaintiff's § 1983 claims in Counts I, II and III against Defendants in their individual capacities fail and must be dismissed. Defendants' Motions to Dismiss Counts I, II, and III are **GRANTED**. ECF Nos. 4, 15.

MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANTS' MOTIONS TO DISMISS [ECF NOS. 4, 15]

**B. Count IV: § 1983 <u>Monell</u> Claim**

To prevail in suit against a municipality on a § 1983 claim, a plaintiff must plausibly allege that the state actor defendant (1) deprived plaintiff of a constitutional right and (2) acted under color of state law. <u>Philips v. Pitt County Mem'l Hosp.</u>, 572 F.3d 176, 180 (4th Cir. 2009). "Local governing bodies . . . can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." <u>Monell v. Dep't of Social Servs. of City of New York</u>, 436 U.S. 658, 690 (1978). A municipality is liable under § 1983 if it follows a custom, policy, or practice by which local officials violate a plaintiff's constitutional rights. <u>Id.</u> at 694.

A local government establishes a "policy or custom" in four ways:

> (1) through an express policy, such as a
> written ordinance or regulation; (2) through
> the decisions of a person with final
> policymaking authority; (3) through an
> omission, such as a failure to properly train
> officers, that "manifest[s] deliberate
> indifference to the rights of citizens"; or
> (4) through a practice that is so "persistent
> and widespread" as to constitute a "custom or
> usage with the force of law."

MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANTS' MOTIONS TO DISMISS [ECF NOS. 4, 15]

Lytle v. Doyle, 326 F.3d 463, 471 (4th Cir. 2003) (quoting Carter v. Morris, 164 F.3d 215, 218 (4th Cir. 1999)). Plaintiff contends Defendant Westover is liable under Monell through the decisions or conduct of Defendants Johnson and Stranko who are "high enough in the [City of Westover] government" such that their "actions can be said to represent a government decision." ECF No. 1, at ¶ 161.

The Supreme Court of the United States has held that Monell liability can attach to municipalities when the policy and custom is based upon a single incident. See Pembaur v. City of Cincinnati, 475 U.S. 469 (1986).

> [I]t is plain that municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances. No one has ever doubted, for instance, that a municipality may be liable under § 1983 for a single decision by its properly constituted legislative body—whether or not that body had taken similar action in the past or intended to do so in the future—because even a single decision by such a body unquestionably constitutes an act of official government policy.

Id. at 480. "The fact that a particular official — even a policymaking official — has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion." Id. at 481-82 (internal citation omitted). Accordingly, the Court must determine whether Plaintiff plausibly alleged that the City of Westover

MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANTS' MOTIONS TO DISMISS [ECF NOS. 4, 15]

established a policy or custom through the decisions of persons
with final policymaking authority.

### 1. Final Policymaking Authority

The threshold matter is whether Plaintiff sufficiently
pleaded that Mayor Johnson or Attorney Stranko had "final
policymaking authority." "A final policymaker for the purposes of
municipal liability is someone who has the responsibility and
authority to implement final municipal policy with respect to a
particular course of action." Lytle, 326 F.3d at 472
(quoting Riddick v. School Bd. of City of Portsmouth, 238 F.3d
519, 523 (4th Cir. 2000)). "The question of who possesses final
policymaking authority is one of state law." Riddick, 238 F.3d at
523 (internal citation omitted).

"In order to determine which officials possess final
policymaking authority for the allegedly unconstitutional action
in question, we must look to the relevant legal materials,
including state and local positive law, as well as custom or usage
having the force of law." Id. (internal quotation marks omitted),
(citing Jett v. Dallas Independent School District, 491 U.S. 701,
737 (1989)).

> Helpful in determining whether an official is
> a final decisionmaker is an inquiry into: (1)
> whether the official is constrained by
> policies of other officials or legislative
> bodies; (2) whether the official's decision on

MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANTS' MOTIONS TO DISMISS [ECF NOS. 4, 15]

> the issue in question is subject to meaningful
> review; and (3) whether the policy decision
> purportedly made by the official is within the
> realm of the official's grant of authority.

Valentino v. Village of South Chicago Heights, 575 F.3d 664, 676

(7th Cir. 2009) (internal quotation marks omitted).

Plaintiff names the City of Westover, West Virginia, in his

Complaint, and specifically alleges that "the Constitutional

violations complained of were decisions made by Defendant City of

Westover's Mayor, Defendant Dave Johnson, and/or its attorney,

Defendant Timothy Stranko." ECF No. 1, Compl., ¶ 160. The

Constitutional violations alleged are in Counts I, II, and III:

retaliation in violation of the First Amendment, unlawful seizure

in violation of the Fourth Amendment, and denial of equal

protection under the Fourteenth Amendment to the Constitution.

Plaintiff further alleges that Defendants Johnson and Stranko's

decision-making "can be said to represent a government decision."

Id. at ¶ 161.

The Court must determine whether Plaintiff has sufficiently

pled final policymaking authority by Defendants Johnson and

Stranko regarding the alleged constitutional violations. First,

there are no allegations in the Complaint that Defendant Stranko

had "final policymaking authority." Instead, Plaintiff stopped

short at alleging Stranko was "high enough" in the City of Westover

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS [ECF NOS. 4, 15]**

government for his decision to represent a government decision <u>Id.</u> at ¶ 161. Such an allegation is necessary to establish a municipal policy or custom. <u>Pembaur</u>, 475 U.S. at 471. Without it, the <u>Monell</u> claim as it relies upon Defendant Stranko's authority and conduct fails.

As to Defendant Johnson, Plaintiff states that the "final policymaker is the Mayor of Westover, Defendant Johnson, with respect to the Westover City Council as an executive, administrative, legislative body." <u>Id.</u> at ¶ 157. Thus, Plaintiff has sufficiently alleged, at the pleading stage, that Defendant Johnson possessed final policymaking authority. Regardless, however, the <u>Monell</u> claim still fails because Plaintiff cannot show that the City of Westover, through Defendant Johnson, deprived him of a constitutional right. As discussed <u>supra</u>, Plaintiff has not stated a viable claim under the First, Fourth, or Fourteenth Amendments, upon which to attach municipal liability. Because none of the underlying conduct pled supports a constitutional violation, it follows that such conduct can similarly not support an unlawful government decision, policy, or custom. Thus, Defendants' Motions to Dismiss [ECF Nos. 4, 15] are **GRANTED** as to Count IV and the <u>Monell</u> claim, Count IV, is **DISMISSED**.

### C. Count V: Slander Claim

Plaintiff's slander claim (Count V) fails to allege an

### MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS [ECF NOS. 4, 15]

actionable defamatory statement, and thus Defendants' Motions to Dismiss [ECF Nos. 4, 15] are **GRANTED** as to Count V.[4]

Under West Virginia law, slander is "defamation through oral means." Spears v. Cable News Network, CNN, No. 1:18-CV-162, 2019 WL 3752921, at *2 (N.D.W. Va. Aug. 8, 2019). Slander is "[a] false . . . oral statement that damages another's reputation." Pritt v. Republican Nat. Comm., 210 W.Va. 446, 557 S.E.2d 853, 861 n.12 (2001) (quoting Black's Law Dictionary (7th ed. 1999)). "Plaintiffs who are public officials or public figures must prove by clear and convincing evidence that the defendants made their defamatory statement with knowledge that it was false or with reckless disregard of whether it was false or not," – i.e., actual malice. Haught v. Fletcher, 246 W. Va. 424, 429, 874 S.E.2d 27, 32 (2022) (citing Syl. Pt. 2, State ex rel. Suriano v. Gaughan, 198 W. Va. 339, 342, 480 S.E.2d 548, 551 (1996); New York Times Co. v. Sullivan, 376 U.S. 254, 280 (1964)).

"A court must decide initially whether as a matter of law the challenged statements in a defamation action are capable of a defamatory meaning." Syl. Pt. 6, Long v. Egnor, 176 W.Va. 628, 346 S.E.2d 778, 780 (1986). See Blankenship v. Trump, 558 F. Supp. 3d 316, 327 (S.D.W. Va. 2021). As such, the Court must initially

---

[4] The Court construes Count V as only being alleged against Defendant Viola.

33

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS [ECF NOS. 4, 15]**

determine whether a "statement is one of fact or opinion," because a "statement of opinion which does not contain a provably false assertion of fact is entitled to full constitutional protection." Ballengee v. CBS Broad., Inc., 331 F. Supp. 3d 533, 545 (S.D.W. Va. 2018), aff'd, 968 F.3d 344 (4th Cir. 2020) (quoting Pritt, 210 W.Va. at 557); Syl. Pt. 4, Maynard v. Daily Gazette Co., 191 W. Va. 601, 447 S.E.2d 293 (1994). See Hupp v. Sasser, 200 W. Va. 791, 798, 490 S.E.2d 880, 887 (1997) (finding defendant's opinion that plaintiff was a "bully" is not provably false and is totally subjective); Giles v. Kanawha Cnty. Bd. of Educ., No. 17-0139, 2018 WL 300605, at *4 (W. Va. Jan. 5, 2018) (finding respondent's "feelings and opinions regarding his own judgment about petitioner, do not include provably false assertions of fact, are protected under the First Amendment, and cannot form the basis of a defamation claim.").

Here, Plaintiff, recognizes that as a member of the Westover City Council, he was a public official at the time of the allegations in his Complaint. ECF No. 1, at ¶ 5. Accordingly, to plausibly plead slander against Defendant Viola, he would need to show facts which support Viola acted with actual malice. However, the Court need not reach this question, because Plaintiff's complained-of statements are opinions and thus he has failed to plead a defamatory statement.

MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANTS' MOTIONS TO DISMISS [ECF NOS. 4, 15]

In support of his slander claim, Plaintiff asserts that Defendant Viola told Plaintiff's mother that "He is nothing but a big fat, lying, son of a bitch." ECF No. 1, at ¶ 175. The complained-of statement, while unflattering, is clearly a matter of opinion, which does not contain a clearly provable assertion of fact. Assuming at the 12(b)(6) stage, that Viola did go to Plaintiff's mother's place of work and make this comment, the statement is constitutionally protected speech. Viola's thoughts and feelings regarding Plaintiff are her subjective opinion and the asserted statement did not include any specific fact which could be proven as demonstrably false. Just as calling someone a "bully" is not defamatory, calling someone a "big fat, lying, son of a bitch" is not actionable slander. Accordingly, Defendants' Motions to Dismiss [ECF Nos. 4, 15] are **GRANTED** as to Count V and Count V is hereby **DISMISSED.**

### D. Count VIII: Whistle-Blower Claim

Accepting all the well-pled facts as true, Plaintiff has sufficiently stated a claim under the West Virginia Whistle-Blower Law. W. Va. Code § 6C-1-1, et seq. The Whistle-Blower Law "prohibits an employer from making certain adverse employment changes in retaliation for an employee's protected conduct." State ex rel. W. Virginia Att'y-Gen., Medicaid Fraud Control Unit v. Ballard, 249 W. Va. 304, 895 S.E.2d 159, 172 (2023). In relevant

MULLINS v. JOHNSON, et al.                                    1:22-CV-98

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS [ECF NOS. 4, 15]**

part, the Whistle-Blower Law states:

> (a)   No employer may discharge, threaten, or otherwise discriminate or retaliate against an employee by changing the employee's compensation, terms, conditions, location, or **privileges of employment** because the employee, acting on his or her own volition, or a person acting on behalf of or under the direction of the employee, **makes a good faith report, or is about to report**, verbally or in writing, to the employer or **appropriate authority, an instance of wrongdoing or waste.**

W. Va. Code § 6C-1-3(a) (emphasis added). The statute further defines key terms:

> (d)   "Good faith report" means a report of conduct defined in this article as wrongdoing or waste which is made without malice or consideration of personal benefit and which the person making the report has reasonable cause to believe is true.
>
>                         . . .
>
> (f)   "Waste" means an employer or employee's conduct or omissions which result in substantial abuse, misuse, destruction or loss of funds or resources belonging to or derived from federal, state or political subdivision sources.
>
> (g)   "Whistle-blower" means a person who witnesses or has evidence of wrongdoing or waste while employed with a public body and who makes a good faith report of, or testifies to, the wrongdoing or waste, verbally or in writing, to one of the employee's superiors, to an agent of the employer or to an appropriate authority.
>
> (h)   "Wrongdoing" means a violation which is

### MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS [ECF NOS. 4, 15]

> not of a merely technical or minimal nature of
> a federal or state statute or regulation, of
> a political subdivision ordinance or
> regulation or of a code of conduct or ethics
> designed to protect the interest of the public
> or the employer.

W. Va. Code § 6C-1-2. "[P]roof of retaliation under the Act does not require proof of the unlawfulness of the underlying action," Austin, 2014 WL 5148581, at *10 (denying summary judgment because there was a dispute of material fact as to whether the plaintiff's allegations via email regarding misuse of funds, constituted waste, and if it was causally connected to plaintiff's termination). Thus, a plaintiff need not show the employer broke any laws in alleging retaliation. Id. Moreover, a plaintiff "need only prove waste or wrongdoing to prevail under the statute" and does not need to show a violation of federal or state law. Id. However, reports or communications which are not made to an employer cannot support a Whistle-Blower Law claim. Id. at *9 (rejecting argument that Facebook post accessible to the general public was directed to plaintiff's employer or an appropriate authority).

Here, Plaintiff alleges that as an elected official serving the City of Westover, he made a "good faith report" of "wrongdoing" regarding violations of law and ethics by Defendant Johnson and Officer Dalton. ECF No. 1, at ¶¶ 194-96. Plaintiff also alleges

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS [ECF NOS. 4, 15]**

that his reports included concerns regarding the City of Westover's "omissions [which] could have resulted in substantial abuse, misuse, destruction or loss of funds or resources . . . through lawsuits or other legal action." Id. at ¶ 197. Plaintiff contends that such good faith reports were made to the City Council of Westover, Defendant Johnson, and Defendant Stranko. Id. at ¶¶ 199-201. Finally, Plaintiff contends Defendants retaliated against him by changing his privileges of employment, "in the forms of municipal violations from the City itself, official censure from City Council, essential removal of his rights as a City Council member, public humiliation through both print and social media, and emotional distress." Id. at ¶ 212.

In contrast Defendants contend that Count IX should be dismissed because "Plaintiff did not blow any whistles on anything at all." ECF No. 5, Motion to Dismiss at p. 20. Rather, Defendants characterize Plaintiff's conduct as, at best, "complaining and noisemaking." Id. However, viewing the allegations in the light most favorable to the Plaintiff, the facts highlighted in Defendants' motion, alone, amount to sufficient pleading of "good-faith reports" of "wrongdoing" or "waste". See Id.; ECF No. 1, at ¶¶ 50-53, 67-69, 101-104. For example, Plaintiff pleaded that he attempted to make a report to Defendant Stranko, as the City Attorney, concerning a sexual harassment case and the City

38

MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANTS' MOTIONS TO DISMISS [ECF NOS. 4, 15]

Attorney's involvement [Id. at ¶ 51]; Plaintiff further alleges he asked for an investigation into Defendant Johnson and the City Council [Id. at ¶ 53], and that such reports were made to the City Council of Westover and Mayor Johnson [Id. at ¶ 199].

Plaintiff additionally pled sufficient facts, which if true, would amount to retaliation in the form of changes in his privileges and conditions of employment. Namely, Plaintiff alleges he was physically injured following his reports; was censured by the Westover City Council following the February 22, 2022, City Council meeting, and was deprived of the ability to attend counsel meetings. These allegations are sufficient to survive dismissal at the 12(b)(6) stage of litigation.[5] Accordingly, the Court **DENIES** Defendants' Motions to Dismiss [ECF Nos. 4, 15] as to Count VIII, as they relate to Defendant City of Westover, Defendant Johnson, and Defendant Stranko. For clarity, Plaintiff did not allege any facts supporting Whistle-Blower Act liability against any of the remaining Defendants in their individual capacity, to the extent Plaintiff asserts such causes of actions, they are **DISMISSED.**

---

[5] The Court notes that reports made on social media or to the news media do not support the Whistle-Blower Act claim.

MULLINS v. JOHNSON, et al.                                1:22-CV-98

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS [ECF NOS. 4, 15]**

### E. Count IX: Intentional Infliction of Emotional Distress Claim

A plaintiff must establish the following elements to prevail on a claim of intentional infliction of emotional distress ("IIED"):

> (1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency;
>
> (2) that the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct;
>
> (3) that the actions of the defendant caused the plaintiff to suffer emotional distress; and
>
> (4) that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

Syl. Pt. 3, Travis v. Alcon Lab'ys, Inc., 504 S.E.2d 419 (W. Va. 1998). The conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." Harless v. First Nat. Bank in Fairmont, 289 S.E.2d 692, 705 (W. Va. 1982). "Whether conduct may reasonably be considered outrageous is a legal question . . ." O'Dell v. Stegall,

MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANTS' MOTIONS TO DISMISS [ECF NOS. 4, 15]

703 S.E.2d 561, 594 (W. Va. 2010) (quoting Syl. Pt. 4, <u>Travis</u>, 504 S.E.2d 419).

The standard for proving such a claim is very high, and "conduct that is merely annoying, harmful of one's rights or expectations, uncivil, mean-spirited, or negligent does not constitute outrageous conduct. On the other hand, outrageous conduct can include physical violence that causes bodily harm and emotional distress." <u>Courtney v. Courtney</u>, 413 S.E.2d 418, 423-24 (W. Va. 1991); <u>Pegg v. Herrnberger</u>, 845 F.3d 112, 122 (4th Cir. 2017) ("It is difficult to overstate the high burden of proof required to sustain a tort claim for intentional infliction of emotional distress/outrage.").

In support of his IIED claim, Plaintiff alleges that Defendant Johnson attacked him during a city council meeting on February 22, 2022, which resulted in Plaintiff tearing his meniscus. ECF No. 1, at ¶ 223. Specifically, Plaintiff claims that "Defendant Johnson's actions caused Plaintiff to suffer severe emotional distress as he was attacked at his place of work, while performing a civil duty." <u>Id.</u> at ¶ 225. Plaintiff further contends that prior to the alleged altercation, "Defendant Johnson proceeded to stand up from his seat and approach the desk of the Plaintiff," and in response, "Plaintiff also stood up from his desk and prepared to defend himself." <u>Id.</u> at ¶¶ 101-02.

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS [ECF NOS. 4, 15]**

The facts as alleged are insufficient to support a claim for IIED as a matter of law. Defendant Johnson's alleged conduct of shoving at Plaintiff's shoulder during the City Council meeting does not reasonably rise to the level of conduct which "was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency." Syl. Pt. 3, <u>Travis</u>, 504 S.E.2d 419. The alleged shove is more appropriately characterized as uncivil or mean-spirited conduct. While this interaction could reasonably be defined as embarrassing and unprofessional, the entirety of the altercation, including the alleged physical violence, does not constitute outrageous conduct. Merely alleging emotional distress in connection with bodily injury does not meet the high burden of supporting a claim for IIED. If that were the case, any assault or battery claim would naturally attach an IIED cause of action.

Moreover, Plaintiff failed to plead any facts evidencing he actually suffered emotional distress – beyond the fact that this altercation occurred during a council meeting. Plaintiff claims he was advised to keep "his person away from City Council meetings by his physician," [ECF No. 1, at ¶ 216]; he does not allege that he stayed away due to emotional distress.[6] Accordingly, Defendants'

---

[6] In support of his <u>Monell</u> claim, Plaintiff alleges that he began taking anxiety medication due to "the harassment he endured while serving on the City Council because of his condemnation of the conduct of the City Council, Defendant Johnson, and Defendant Stranko." ECF No. 1, at ¶ 165.

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS [ECF NOS. 4, 15]**

Motions to Dismiss [ECF Nos. 4, 15] as to Count IX are **GRANTED** and Plaintiff's IIED claim, Count IX, is **DISMISSED**.

**F. The Court denies as moot the remainder of the Defendants' Motions.**

In addition to asserting that Plaintiff's claims in Counts I, II, III, IV, V, VIII, and IX are insufficiently pled and lack merit, the Defendants also contend that (1) qualified immunity shields the individual defendants from liability for Plaintiff's claims and (2) that the City of Westover is not liable for any alleged intentional torts pursuant to W.Va. Code, 29-12A-4(b)(1) of the West Virginia Governmental Tort Claims and Insurance Reform Act. ECF No. 5 at pp 22-24. Based on its rulings herein, the Court **DENIES AS MOOT** the remainder of these arguments. Defendants may raise these arguments later if they believe them relevant to claims which Defendants did not move to dismiss, such as the assault and battery claims.

**V.   CONCLUSION**

For the foregoing reasons, Defendants' Motions to Dismiss [ECF Nos. 4, 15] are **GRANTED** as to Plaintiff's claims for (I) retaliation in violation of the First Amendment; (II) 42 U.S.C. § 1983 violation of the Fourth Amendment; (III) 42 U.S.C. § 1983

---

This fact alone does not support the IIED claim because Plaintiff does not allege that he began taking the anxiety medication following the February 22, 2022, altercation due to emotional distress.

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS [ECF NOS. 4, 15]**

violation of the Fourteenth Amendment; (IV) 42 U.S.C. § 1983 <u>Monell</u> Liability; (V) Slander; and (IX) Intentional Infliction of Emotional Distress. Defendants' Motions to Dismiss [ECF Nos. 4, 15] are **DENIED** as to Plaintiff's claim for (VIII) violation of the West Virginia Whistle-Blower Law against City of Westover, Defendant Johnson, and Defendant Stranko. Accordingly, Plaintiff's Complaint [ECF No. 1] is **DISMISSED** as to Counts I, II, III, IV, V, and IX.

Based on the Court's rulings, the only remaining claims in this case are Counts (VI) assault and (VII) battery against Defendant Johnson and Count (VIII) violation of the West Virginia Whistle-Blower Law against City of Westover, Defendant Johnson, and Defendant Stranko. Thus, Steve Andryzcik, Edie Viola, Gary Weber, Jeffery Friend, Duane Tatar, and Sandy Weiss are hereby **DISMISSED** as Defendants.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Memorandum Opinion and Order to counsel of record by the CM/ECF system.

**DATED:** March 26, 2024

_Tom S Kleeh_
THOMAS S. KLEEH, CHIEF JUDGE
NORTHERN DISTRICT OF WEST VIRGINIA